LESTER L. ROBISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53878. Promulgated February 14, 1936.

*John F. Watson, Esq.*, for the petitioner.
*S. B. Anderson, Esq.*, for the respondent.

#### OPINION.

McMAHON: This is a proceeding for the redetermination of a deficiency in income tax for the calendar year 1928 in the amount of $760.76, not all of which is in controversy. It is alleged that the respondent erred in including in petitioner's income the sum of $4,739.70, since such amount represented income to Mary S. Robison from the partnership of Robison & Trippeer.

The petitioner and his present wife, Mary S. Robison, have been married 11 or 12 years, during which time they have resided at Walla Walla, Washington.

In 1925, the partnership known as Robison & Trippeer was formed for the purpose of acquiring and operating a farm or ranch located in the State of Oregon.

On September 16, 1925, A. N. Dyer and his wife and W. G. Hawkinson, a single man, of Lewiston, Idaho, entered into an agreement to sell to petitioner and his wife and H. A. Trippeer and his wife, certain real estate located in Wallowa County, Oregon, known as the Brockman Ranch, together with all cattle, horses, and other chattels thereon, in consideration of the payment of $56,850. It was recited in such agreement that $10,000 thereof had already been paid and receipt was acknowledged. It was provided that of the remainder the sum of $11,850 should be paid on or before November 2, 1925, and that all the rest of the purchase price should be paid on or before November 2, 1935, to be evidenced by promissory notes.

Pursuant to the above agreement dated September 16, 1925, there was transferred by deed dated November 2, 1925, to petitioner and his wife and Trippeer and his wife, by A. N. Dyer and wife and W. G. Hawkinson, a number of tracts of land situated in Wallowa County, Oregon, containing approximately 677.74 acres and used as one ranch, another separate tract in the same county containing 90.24 acres, and numerous cattle, horses, mules, and other chattels on the real property. The consideration recited therein was $56,850, of which it was acknowledged that $21,850 had been paid. It was provided that the balance of $35,000 should be payable in installments, evidenced by promissory notes.

On November 2, 1925, petitioner and wife and Trippeer and wife executed four promissory notes, two of which were each in the principal amount of $6,000, one of which was in the principal amount of $14,000, and one of which was in the principal amount of $9,000, each payable on or before November 2, 1935. To secure the payment of the notes, petitioner and wife and Trippeer and wife, on the same date, executed in favor of the sellers of the property a mortgage covering both the real estate and personal property. Later, on December 9, 1926, after there had been some question about the clarity of the title or description of the land, the same parties entered into another mortgage to take the place of the mortgage first executed. The new mortgage embraced the same properties and secured the same four notes and some interest.

When the partnership was organized it did not have any cash or other assets. The above described property was bought with bor-

rowed money. The down payment of $10,000 was paid with borrowed money. The business was operated entirely on borrowed money. Petitioner's wife did not contribute any capital to the business.

In the operation of the partnership business petitioner took care of the business—looking after the sales and trades and ordering the supplies. The property in question was a considerable distance from Walla Walla, the residence of petitioner and his wife. During the time that the partnership existed petitioner went to the property and worked five or six times a year. Petitioner's wife usually went to the property once each year, in the fall. Her services to the partnership consisted of putting up fruit to be consumed by the help employed on the property, taking petitioner by automobile to and from a boat on his trips to the property in question, and obtaining food for the ranch.

Petitioner and Trippeer signed the checks of the partnership. However, they gave petitioner's wife the privilege or right to sign checks in their absence; and notice of such privilege was given to the bank.

The partnership went out of existence in 1928 at the time that the properties owned by it were sold to one Johnson for $85,207.04. The purchaser took the property subject to the mortgage which was still outstanding. The indebtedness of the partnership was paid out of the cash proceeds of the sale.

The books of the partnership, consisting of journal, cash book, and ledger, were kept by one Mellally from information and checks turned over to him by petitioner.

The opening entry on the partnership books, which is not dated, is as follows: "L. L. Robison, capital, credit, $27,868.04. H. A. Trippeer, capital, credit, $27,868.04." The books show that the property was paid for by the partnership. They show that the money received from Johnson on the disposition of the properties of the partnership went to pay the debts of the partnership and that the profit was credited to the capital accounts of petitioner and Trippeer equally.

The name of neither petitioner's wife nor Trippeer's wife appears anywhere in any of the books of the partnership. Therein all the credits or charges went either to petitioner or Trippeer.

The estate of Elsie Robison, petitioner's former wife, did not at any time have any interest in the business of the partnership of Robison & Trippeer.

The partnership of Robison & Trippeer was composed of only the petitioner and H. A. Trippeer.

No separate funds or property of the petitioner were used by him in the acquisition of the partnership interest standing in his name.

In its return for the calendar year 1928, the partnership of Robison & Trippeer showed net income of $18,958.79, the most of which was derived from the sale of its real and personal property. Therein it was represented that the partnership was composed of petitioner and H. A. Trippeer, that each of them owned a 50 percent interest, and that each received one half of the net income of the partnership. This was in accord with the partnership books.

In his income tax return for the calendar year 1928, petitioner showed one half of the income from the partnership of Robison & Trippeer in the amount of $9,479.40, but reported only one half of that amount, or $4,739.70, as taxable to him. His return showed tax due in the amount of $1,440.46, which was paid.

In her income tax return for the calendar year 1928, the petitioner's wife showed one half of the income from the partnership of Robison & Trippeer in the amount of $9,479.40, and reported one half of that amount, or $4,739.70, as taxable to her as her community interest. The return showed tax due in the amount of $61.64, which was paid.

In the notice of deficiency the respondent, among other adjustments, added to net income, as reported by petitioner in his return, the amount of income, $4,739.70, which had been returned by petitioner's wife as income from the partnership of Robison & Trippeer, with the following explanation:

Your contention that income received from the partnership of Robison and Trippeer represents community income and, therefore, is reportable as such on the returns filed by you and your wife, Mary S. Robison, has been denied for the reason that the information furnished is not sufficient to sustain your contention.

You state in your letter that the financing of the transaction was on money borrowed on notes of the partnership firm and under the laws of the State of Washington constituted obligations of the community of Robison and Trippeer and their respective wives.

Since the notes were signed by you and your partner and your portion of the cash payment was made from earnings in the partnership of L. L. Robison and Estate of Elsie Robison which is your separate property, it is apparent that your wife assumed no obligation for the money borrowed or that any community funds were invested therein. Furthermore, there is no evidence of any community effort in this transaction.

The action of the agent in taxing the entire amount of income received from the partnership on your return has been approved by this office.

Upon the foregoing facts, which we find, the only issue presented is whether respondent erred in including in petitioner's taxable income the amount of $4,739.70, the amount which petitioner's wife had included as part of her taxable income from the partnership of Robison & Trippeer either as her distributive share as a partner or as her community interest. There is no question raised as to the correctness of the amount of the earnings of the partnership, which

was $18,958.79. The effect of respondent's holding is to tax to petitioner one half of the earnings of the partnership rather than one fourth thereof as contended for by the petitioner.

The first question presented is whether the partnership was composed of petitioner and Trippeer or of those two men and their wives. From a consideration of all the evidence, none of which has been overlooked, we have found as a fact and now hold that the partnership of Robison & Trippeer was composed of only the petitioner and Trippeer; and the record does not justify a finding or holding that petitioner's wife or Trippeer's wife were, at the time in question, members of the partnership of Robison & Trippeer. Here, from the evidence, it appears that the partnership books show that only the petitioner and Trippeer were the partners. The income tax return of the partnership for the year 1928 shows the same. Such return also shows that the profit was distributed equally to petitioner and Trippeer. Evidence adduced by the petitioner apparently for the purpose of showing that petitioner's wife was a member of the partnership, regarding the right given her by petitioner and Trippeer to sign checks on behalf of the partnership, is of little significance. It might be considered as evidence that she was not a member of the partnership since if she was a partner she would have the right to sign checks as a partner and it would not be necessary for her to receive authorization. There was nothing done by the parties which can not be reconciled with the view that the partnership was composed of only petitioner and Trippeer. The fact that the property, which was used and operated by the partnership, was transferred to petitioner and Trippeer and also the wives, and that the wives joined the husbands in executing back to the seller of the property notes for the unpaid purchase price, and that they also joined in the mortgage given back, may be explained by the desire of the seller to have the added security of the obligations of the wives. The help rendered by petitioner's wife, as set forth in the findings of fact, is not necessarily indicative that she was a partner. She did not testify at the hearing, nor did either Trippeer or his wife. We have no evidence whatever as to the activities of Trippeer or of his wife in regard to the partnership activities. Furthermore, the evidence shows that the petitioner's wife did not contribute any capital to the business. Thus it can not be said that petitioner is taxable upon only one fourth of the net income of the partnership upon the ground that the wives were members of the partnership.

However, it is our opinion that even so the result here must be the same, since he is taxable upon only one fourth of the net income of the partnership for the reason that under the community prop-

erty laws of the State of Washington only one fourth of such income belonged to him, his wife sharing equally with him in the income of the partnership accruing to the partnership interest standing in his name, as community property. We so hold upon the authority of *Rucker* v. *Blair*, 32 Fed. (2d) 222, and *J. P. Schumacher*, 32 B. T. A. 1242. The latter case follows the former. No application for a writ of certiorari was applied for in the *Rucker* case.

Upon the whole record we have found as a fact and now hold that no separate funds or property of the petitioner were used by him in the acquisition of the partnership interest standing in his name. The evidence shows that the partnership property was bought on borrowed money and that the partnership was operated on borrowed money. We know from the evidence that the real and personal property was purchased in part in the names of, and upon the credit of, the wives of the petitioner and the other partner. Each of the wives joined in the notes and the mortgage given to secure the remainder of the purchase price of such assets. In any event it has not been shown that there was separate property of petitioner employed in the partnership. It is clear from *Rucker* v. *Blair*, *supra*, and cases cited therein, that the presumption is that any property held by either spouse is community property and that the burden of proof is upon any one alleging the contrary. Here there is no showing that the funds or property invested by the petitioner in the partnership were not community property.

It is our opinion and we have proceeded upon the theory, that the law of the State of Washington, the state of residence of the petitioner, applies, rather than the law of the State of Oregon, in which the partnership property giving rise to the income was located. There is no proof to show where Trippeer and his wife resided or where the partnership agreement was executed, but this lack of information is not vital since the proof does show that the petitioner, as well as his wife, were residents of the State of Washington in the year in question. In *C. M. Weatherwax*, 21 B. T. A. 861, a husband and wife, residents of the State of Washington, went to the State of California but retained their residence in the State of Washington. In 1921 the taxpayer borrowed money on a parcel of community real estate located in Washington and invested it in an oil venture in California. In the taxable years 1924 and 1925, during which years a wife in the State of California had a mere expectancy rather than a vested interest in community income, income was received from this oil venture. In that proceeding we stated in part:

The facts above set out establish to our satisfaction that in 1924 and 1925 petitioner and his wife were residents of and had their domicile in the State

of Washington. They are accordingly entitled to each report one-half of the community income. The funds invested in an oil venture in California, and from which it appears that income was received in the taxable years, were community funds and the interest of petitioner therein and in the income therefrom is governed by the law of the domicile. See *John Henry*, 6 B. T. A. 131. * * *

It thus appears that the law of the state of the residence is governing in the determination of who owns income. For this reason in the instant proceeding, we are governed by the law of the State of Washington, and the law of the State of Oregon has no bearing.

*Decision will be entered under Rule 50.*